Judge Underwood
Delivered the Opinion of the Court.
On the 80th of July and 2nd of August, 1831, the declaration <i.nd notice were executed upon the tenants in possession. On the 26th of July, 1831, Ann T. Sanders, the only lessor who had title, conveyed the land, by deed of mortgage, to Theobald and Davis. The title vested, immediately on the execution of the mortgage, in the mortgagees, by the terms of the deed, and was to revert, upon the payment of the money secured by it, in one year. At the time of the execution of the mortgage, the defendants were in the adverse possession of the liyid. The only questions which we shall notice grow out of the foregoing facts.
It is contended by the appellants, that the verdict and judgment for the appellee cannot be sustained, because the title was in Theobald and Davis at the commencement of the suit. There is no doctrine better settled than that the lessor of the plaintiff in ejetítment musí have title at the commencement of the suit. The service of the declaration and notice upon the tenants in possession, is the commencement of an action of ejectment. The demise laid in the declaration is dated in September, 1830, and three days after the demise, the ouster is alleged to have been committed. The counsel for the appellee insists that, title at the date of the demise and ouster, as laid in the declaration, is sufficient. In this he is clearly wrong. It is true, that the lessor must have title at the date of the demise. Cox vs. Joiner, 3 Bibb, 297. Anderson vs. Turner, 3 Marshall, 134. But these cases will not allow a plaintiff to lay his d.emise at a time when the lessor had title, and thereaf *69 ler to recover without title. There must be title in the lessor both at the date of the demise and commencement of the suit. The action is pending from the time of the service of the declaration and notice. Taylor &c. vs. Taylor &c. 3 Marshall, 20.
A conveyance, by mortgage, passes the legal titletothemoitgagee; but if there is a possession of the land held adversely to the parties to the mortgage, it is ■within the cliam perty actofjan. 1824, and void; and therefore, doesnot destroy the mortgagor’s right of action against the tenants in posses-session. [See Judge Nicholas’ opinion upon this point, post p. 73.]
Conveyances of land in the adverse possession of any person, other than the vendor or vendee,are void merely — there is no forfeiture of the title for that «aúse.
If, then, the mortgage was effectual to pass the title of Ann T. Sanders to Theobald and Davis, the verdict and judgment cannot be sustained, unless the case of a mortgagor forms an exception to the general rule. That it does not, so long as the mortgage money is unpaid, was decided in Dougherty vs. Kercheval, 1 Mar. 52. There is no ground for the supposition that the mortgage was satisfied at the commencement of the suit. The plaintiff could not, therefore, succeed upon the demise of Ann T. Sanders, if the mortgage deed was effectual to pass the title from her. Whether it was or not, depends upon the question how far it ,was affected by the provisions of the act relative to champerty and maintenance, approved January 7th, 1824. At the date of the mortgage, the appellants were in the adverse possession of the land, and therefore, according to the plain letter of the first section of the act, the mortgage passed no title so far as it embraced land in the adverse possession of the appellants.- A mortgagee is, technically speaking, a purchaser. The act expressly forbids the purchase, “ by deed of conveyance, bond or executory contract,” of lands adversely possessed. If a mortgage was sustained as an exception, it would open a door to theeasy evasion of the whole statute. We are of opinion, that the mortgage passed no title to the mortgagees for the land adversely held by the appellants.
Under the foregoing view of the subject, the plaintiff had a right to recover upon the demise of Ann T. Sanders, unless her title had been destroyed by the said act of January, 1824.
The first section, in substance, declares, that no person shall sell or purchase, by deed of conveyance or executory contract, any title to land adversely possessed by a person, other than the vendor or vendee ; that every deed or contract executed in violation of this section, shall be void, and that no right of action shall accrue thereon.
Contracts to carry on land suits for part, or profit, of the land, are prohibited — the penalty, a forfeiture of the title of either party to the contract, to enure to the benefit of the occupant; who may piead or shew the fact, in bar of any snitforthoiand, brought by any party to such contract.
The second section provides, that it snail not be lawful to contract, or to undertake to recover, or carry on any suit for the recovery of land adversely possessed, in consideration to have part or profit thereof; that the parties to such contract shall forfeit all right to the land claimed, and all right to maintain any action upon the title, and that the title shall vest in the commonwealth, and enure to the benefit of the adverse possessor.
The third section allows the adverse possessor “to shew or plead the sale or purchase of any pretended right or title in violation of the first section of this act, or any contract or agreement made in violation of the second section of this act, in bar of any action or suit, or claim founded thereon.”
The decision must turn upon the proper construction of the third section. Ann T. Sanders violated the first section, inasmuch as she sold by deed of conveyance land adversely possessed by the appellants. The consequence is, that the deed, under the first section, passed no title. It is void. Ann T. Sanders has not violated the second section. How, then, does the third section operate upon the case ? Does it bar her present action ? The great object of the legislature, by the act of IS24, was to prevent lands, adversely possessed, from being made the subject of contracts, except with the occupant. He might quiet his title; but strangers should not purchase over his head. Therefore, the first section made bom fide attempts to pass the title to such lands, void, unless in favor of the occupant; and the second section declared that a champertous contract should forfeit the title to the commonwealth, for the benefit of the occupant. The ’purchaser, under the first section, could neither maintain an action upon his deed, nor contract, against the vendor or occupant, because his deed and contract were, by the terms of the act, declared to be void. The vendor, violating the second section, could not, thereafter, maintain an action upon his. forfeited title, (con- . ceding, for the present, that the forfeiture could be enforced as contemplated by the act,) and the purchaser could not, because no title could vest in him under the deed. Under tiie first section, as the title was not for- *71 felted, the vendor might maintain an action asserting it, notwithstanding his attempt to part with it.-' Now, in order to defeat the plaintiff, the effect of the third sec-. tion, connected with the first, must operate to the destruction of Ann T. Sanders’ title, and make her sitúation as bad as it would have have been under the opera-, tion of the second section, had she violated that instead of the first. We cannot indulge in such a construction of the act, because it is, in effect, annihilating a right, as a punishment, when no offence has been committed by the party. The act purports to forfeit the title in one case only, and that \is for a champertous contract. If the title is destroyed because of the attempt to mortgage it, the legislature have accomplished its destruction, not by any clear declarations of intention to do it in such a case, but have done it by laying, the foundation in the third section for an inference, that such was the design. Before such an inference can be indulged, the ground for it should be very manifest, because we see that when the legislature declared in the second section, that the land should be forfeited in a certain state of case, it was done in the most unequivocal manner ; and there is every reason to suppose that the legislature would have been equally clear and explicit in declaring the forfeiture or destruction of the title for a violation of the first section, as they were in regard to the second, if the intention had been the same as to both.
The whole argument in favor of the destruction of Ann T. Sanders’ right or title, rests upon the meaning of the words “founded thereon,” as used in the third section. The legislature declare their will, to bar certain actions, suits and claims founded on certain things. What are they P The third section gives the answer, to wit, all actions, suits or claims founded on “the sate or purchase of any pretended right or title in violation of the first section, or on any contract or agreement made in violation of the second.” This answer, given in the words of the law, is incorrect according to the argument on the other side, .because, as it is contended, the word “ thereon” refers to its immediate antecedent, and that antecedent is il title or sight” and- hence the answer *72 should be, that all actions, suits and claims are barred, founded on the title or right which has been made the subject of contract in violation of the first and second sections. This cannot be the true construction ; first, because it is inconsistent with the rules of grammar ; and secondly, because it is not true that “right and title” are the immediate antecedents; and thirdly, because other expressions of the third section prove conclusively that the meaning is otherwise. Relative words, in the construction of sentences, are often used for the whole or part of a sentence, as its antecedent. The following example is given by Kirkham : “ We are required to fear God and keep his commandments, which is the whole duty of man.” The 'phrase, “ to fear God and keep his commandments,” is the antecedent to the relative which. The word thereon, in the third section, is used as a relative, and the construction of the whole sentence in which it occurs, proves that we can with no propriety select a particular word as its antecedent, but that it relates to the entire phrases which refer to the first and second sections of the act. When we ask what things are meant and referred to by the word “thereon,” the answer is in the language of the phrases which constitute the antecedent, to wit, the sale or purchase of any pretended right in violation of the first section, or any contract or agreement made in violation of the second section. If the word thereon is limited to the title, and that was the design of the legislature, they should have used the words founded on it, instead of founded thereon. By the use of the pronoun it, we should have selected the particular noun substituted thereby. The expression founded thereon relates to “ any contract or agreement made in violation of the second section,” beyond all doubt. Such contract or agreement is the immediate antecedent, and if vre are bound to select a particular word, instead of the whole of both or one member of the entire sentence as the antecedent, we should be bound 'to take the contracts and agreements here alluded to, under the rigid rule of hunting up the immediate antecedent. As these contracts and agreements must be embraced in the antecedent in part at least,-why not em *73 brace the sales and purchases, forbidden by the first section, likewise ? Those sales and purchases were the great objects in the contemplation of the legislature, and the mention of the title was for no other purpose than to designate the character of the sale or purchase which the legislature had in view: to wit, the sale or purchase of a pretence title in violation of the first section.
ju{j„e Nic¡ho_ LAsM-emarks, decision?
The meaning of the third section is this — all actions or claims growing out of (would perhaps have been a better expression than founded thereon,) sales, purchases, contracts or agreements made in violation of the first and second sections of the act, shall be barred and set at nought, by shewing or pleading the illegality of the sales &c. out of which, or upon which, the right attempted to be asserted is supposed to grow or to be founded. That provision of the third section which makes the defence consist in shewing the illegality of the sales, contracts &c., in connection with the whole object of the statute, proves that the third section was added, through abundant caution, to give effect in practice to the two first sections, by pointing out the mode of defence ; and the provision made in the third section for a discovery, is confirmation, that the only object of the third section was to,point out the proper course to render the two first sections available to the adverse possessor of the soil. '
We have deemed it ^proper to state thus much, because of the importance of a proper construction of the third section of the act of 1824, and because of the division of the court upon the point, in the case of Wash vs. McBrayer, 1 Dana, 569.
We are, therefore, of opinion, that the act of 1824 interposes no obstacle to the lessor’s right in the present case ; and as the other questions were correctly decided by the circuit court', the judgment is affirmed, with costs.