No. 29.—John B. Scisson, plaintiff in error, *vs.* William R. McLaws, defendant in error.

[1.] To enable a plaintiff in an action of ejectment, to recover when his title to the premises is controverted, he must prove that he had the *legal title* to the property in dispute, at the time of the demise laid in his declaration : that such legal title was accompanied by a *right of entry*; and that the defendant, or those claiming under him, were in *possession* of the premises at the time the declaration was served upon him.

[2.] When there is *any evidence* of the defendant's possession, at or about the time of the service of the declaration on the defendant, it is proper for the Court to submit that fact to the Jury, with the appropriate instructions, as to the law on that point.

Ejectment, in Pike Superior Court. Tried before Judge Stark. April Term, 1852.

This action was brought in January, 1848, for the recovery of a lot of land in the County of Pike, and also for mesne profits.

The plaintiff produced his title deeds covering the land, and the following testimony to show possession in defendant :

Sherrod Sims testified, that defendant had gotten timber, light-wood and cross-ties for the rail-road off the lot; that he saw the hands cutting timber, and defendant said they were working for him; also that defendant hauled the lightwood to the rail-road and sold it.

Witness stated that a man named Gray was living on the land, but by whose right he does not know. Gray also got timber off the lot, and hauled the lightwood with his own team. Defendant sold Gray a cart and steers, and took lightwood in pay.

Johnson Thornton testified, that defendant while attending to Gray's hauling some lightwood·from the lot, told him (witness) that he had bought the lot from a man in Mississippi. Had seen Gray and his sons working on the lot; had not seen defendant's hands there.

John J. Bagwell testified, that he had seen defendant, in 1846 and 1847, superintending the hands, who were getting timber off the lot. Gray and his sons were cutting timber at the same time, on another part of the land. Defendant said he had got 1500 or 1600 cross-ties, worth 18 or 20 cents each. Gray was living on the lot in January, 1848, and for two or three years previously.

Plaintiff also introduced the receipts of the Rail-road Co. for cross-ties received of defendant, which were objected to, but admitted by the Court.

Defendant introduced no evidence. The Court charged the Jury, that the title of the plaintiff would suffice to recover, if they should be satisfied that defendant was in possession at the time of commencement of the action. On that question the Court charged as follows: What do we mean by possession? It is such an actual occupation and enjoyment of the property by the defendant, or his agents, tenants or servants, as amounts to a disseizin of the plaintiff, and excludes him from entering on and enjoying his property. Ejectment cannot be maintained against a mere trespasser—as a wandering person who lodges

temporarily on the land, or a person who once or occasionally cuts wood from it.   But ejectment may be maintained against one who, under claim of ownership, though he may not actually live on the land, yet treats it and uses it as his own, and thereby excludes the entry of the owner.   What one does by those in his employment, he does by himself.   If the defendant acted in concert with Gray, under a claim of ownership on his part to occupy the land, and cut or sell timber off it, and he and Gray occupying the land in concert, so as to hinder the enjoyment of the rightful owner; then Gray's possession is his possession, and the act of one is the act of both.   The Jury should consider all the circumstances, and determine how far defendant's selling Gray oxen and provisions, and getting Gray to haul wood off the land for him, (if he did these things) is evidence of a community of purpose between Gray and defendant."

The Jury found for plaintiff the premises in dispute, with mesne profits; upon which defendant moved for a new trial, on the ground of error in admitting in evidence the rail-road receipts, and of error in the charge on the subject of possession.

The motion for a new trial was refused; which is alleged as error, as well as the original rulings excepted to.

BORDERS & HARRIS, W. W. ARNOLD, for plaintiff in error.

A. R. MOORE & FLOYD, for defendant.

*By the Court.*—WARNER, J. delivering the opinion.

[1.] On the trial of this action of ejectment, the Jury found a verdict for the plaintiff for the premises in dispute, and two hundred and twenty-five dollars damages for mesne profits, &c. The defendant in the Court below, moved for a new trial on two grounds.   First, because the Court erred in its charge to the Jury, on the subject of *possession* by the defendant, as stated in the record; and second, because the Court admitted in evidence the receipts of the defendant to the Rail-road Company.

To enable a plaintiff in an action of ejectment to recover,

Scisson *vs.* McLaws.

when his title to the premises is controverted, he must prove—first, that he had the *legal title* to the property in dispute at the time of the demise laid in his declaration; secondly, that such legal title was accompanied by a *right of entry*; and thirdly, that the defendant, or those claiming under him, were in *possession* of the premises at the time when the declaration was served upon him. *Adams on Ejectment,* 247. 2 *Greenleaf's Ev.* §304. *Goodright vs. Rich,* 7 *Term Rep.* 323.

[2.] Was there *any evidence* before the Jury, of the defendant's *possession* of the premises in dispute? The evidence not only shows that the defendant was in possession of the lot of land; that he cut, and carried off a large quantity of timber and lightwood, which he sold to the Railroad Company; but that while he was thus in possession, exercising acts of ownership, he claimed to have *purchased the land* from a man in Mississippi. The evidence, therefore, shows that he was in possession of the land, exercising visible and notorious acts of ownership over it, and at the same time, claimed to be the *absolute owner by purchase.*

The complaint is, that the evidence did not show he was in possession at the *precise day* the writ was served on him. The defendant did not live on the land, but had been, from time to time, cutting timber thereon, by his hands, and hauling it to the rail-road. One witness says the defendant got one hundred cords of lightwood off the lot; another witness states that he got 1500 or 1600 cross-ties off it, and was frequently seen there at work with his hands, claiming to be *the owner* of the land. He certainly exercised such acts of authority and *dominion* over it, as owners usually do over their own lands, who are in possession thereof: and there is no evidence that he ever abandoned, or disclaimed the possession which he asserted as such owner, by having purchased it from a man in Mississippi.

On this state of facts, the Court below very properly left the question of possession to the Jury; instructing them as it did, that the plaintiff could not recover, unless he had satisfied their minds by proof, that the defendant was *in possession* of the land, *at the time of the commencement of the suit.*

The Jury have found by their verdict, from the evidence, that the defendant was *in possession at the time of the commencement of the suit.* According to the facts of the case, as exhibited on the face of the record, the question of possession was fairly submitted to the Jury by the Court in its charge.

The fact that Gray was shown to have been in possession of part of the lot, does not necessarily exclude the possession of the defendant as to the remainder of the tract; both may have been in possession. Gray not being sued, will not be *ousted* of his possession, unless he holds as a *tenant* under the defendant, who said he was *the owner,* and therefore, *presumed landlord* of the premises, to whom the other tenants may have attorned in the absence of the *true owner.*

The receipts given to the Railroad Company were properly admitted in evidence, to show that the defendant received pay for the wood and timber as *his own right and property,* in order to rebut the presumption that he was acting as the agent or tenant of another person, when he cut the timber off the land, and sold it. The receipts went to confirm what the plaintiff contended for; that he was in the possession and enjoyment of the land as *his own,* hauled off the lightwood, cut and sold the timber as *his own,* and received payment therefor, as *bona fide owners of property usually do.* We entertain no doubt this is a *just verdict* against the defendant, and the Court below was right in refusing a new trial. Let the judgment of the Court below be affirmed.