DUNBAR J. PAUL, ET AL., APPELLANTS, VS. ALBERT FRIES, APPELLEE.

1. When several tax deeds upon the same property are held by the same party as grantee, and the eldest is good to vest title in him, the subsequent deeds are merely evidence of the payment of taxes, and give him no title, as he already had it.

2. A paper purporting to be a tax deed is not executed within the meaning of the statute so as to convey the property, unless it is attested by subscribing witnesses (under the revenue law of 1874).

3. Where in ejectment a tax deed not executed so as to convey the land is given in evidence without objection, and no point is made

either in the Circuit Court or on appeal that the deed is invalid in that respect, yet this court cannot permit such deed to have operation as a conveyance and give it effect by our silence.

4. If the plaintiff has not a legal title at the time of commencement of his suit in ejectment, he cannot recover. An equitable interest ripening into a legal title, after suit brought, cannot have relation to the former equitable interest so as to give a right of possession at the inception of the suit. And so a tax deed executed on the day of trial cannot be given effect in favor of the plaintiff, although he might have held the certificate of sale and might have had a deed before suit. The rule is otherwise as to a defendant who sets up such title to defeat the plaintiff's claim of possession. See Spratt vs. Price, 18 Fla., 289.

5. When husband and wife reside upon land which is the separate property of the wife, the assessment for the purposes of taxation may be made in name of the husband as an occupant.

6. Under the revenue law of 1874 a tax deed duly executed is *prima facie* evidence of title and of the regularity of the proceedings from the valuation of the land by the Assessor to the date of the deed inclusive, and the burthen of proof to defeat such title is upon the person resisting the same.

Appeal from the Circuit Court for Duval county.

On the 14th day of September, A. D. 1880, Albert Fries brought his action in Duval county Circuit Circuit against Dunbar J. Paul, John L. Bonnell and Wm. Gruber in ejectment to recover possession of the east half of lot four in block twenty-eight, according to Hart's map of the city of Jacksonville, bounded on the south by Duval street, on the east by Liberty street, on the north by lot eight in said block, and on the west by the west half of said lot four, situated in the city of Jacksonville, Duval county and State of Florida, containing about one-quarter of an acre, claiming mesne profits to the amount of five hundred dollars.

The defendants plead not guilty.

The cause was tried on the 5th day of May, A. D. 1880, and the jury found defendants guilty of withholding the premises described in the declaration. The defendants

moved for a new trial, which was denied, and they appealed.

The bill of exceptions shows the following facts:

The plaintiff to establish his cause of action introduced a tax deed of the premises described in the declaration made and executed by Thomas E. Buckman, Clerk of the Circuit Court of said county, conveying in the name of the State of Florida to the said Albert Fries the said premises by virtue of a sale of the same made by Samuel Spearing, Collector of Revenue, on the 9th day of July, 1875, for the non-payment of taxes levied and assessed thereon as the property of Joseph Lopez for the year 1874. This deed was acknowledged, and was also recorded on the 23d day of August, 1878, but it has no witnesses.

He next introduces a like tax deed of the same premises, except the sale was made by Henry A. L'Engle, Collector of Revenue, on the 9th day of July, A. D. 1877, for taxes levied and assessed thereon as property of Joseph Lopez for the year 1876. This deed bears date the 5th day of May, A. D. 1881, and was acknowledged on that day, and has no witnesses. The cause was tried on the 5th day of May, 1881, the issue having been joined on the 1st day of November, 1880. The defendants' counsel objected to the introduction of this deed in evidence upon the ground that it was incompetent evidence not pertinent to the issue, and because it was executed at a date subsequent to the issue joined and to the demise laid in the declaration, and is not in the issue made by the pleadings. The court overruled the objection and admitted the deed in evidence, and the counsel for defendants excepted.

The plaintiff next introduces a like tax deed to himself of same premises, except that the sale was made by Samuel Spearing, Collector of Revenue, on the 4th day of May, 1876, for non-payment of taxes levied and assessed thereon

as property of Joseph Lopez for the year 1875. This deed bears date the 5th day of May, 1881, and was duly witnessed and acknowledged on that day. The same objection was made to the introduction of this deed in evidence as to the last above-mentioned deed. The court overruled the objection, and defendants' counsel excepted.

Plaintiff then proved possession of property in the defendants at the time of the commencement of the action and rested his case.

The defendants introduced first a deed of said premises from Maria Doggett to Jane Lopez dated 18th July, 1866, and recorded on the same day; second, a mortgage on same premises made by Jane Lopez and Joseph Lopez, her husband, to Phebe Fridenburg to secure $1,000, dated 22d January, 1878, payable in one year, and recorded January 23, 1878.

Third. A final decree of foreclosure of a mortgage in favor of Phebe Fridenburg against Joseph Lopez, Peter A. Lopez, et al., dated May 2, 1879, directing the premises described in above-mentioned deed and mortgage to be sold and the proceeds to be applied to the payment of the mortgage debt, interest, &c.

Fourth. A master's deed from John E. Hartridge, Special Master in Chancery, of the same premises to Phebe Fridenburg, dated June 2, 1879, sold under and by virtue of the decree of foreclosure of May 2, 1879, Phebe Fridenburg being the purchaser for the sum of $570. Deed recorded 4th day of June, 1879.

H. P. Fridenburg testified: I am a son of Phebe Fridenburg and her agent in the city of Jacksonville. The property in controversy belongs to her, and defendants are her tenants.; she purchased it at the foreclosure sale.

Moses J. Brown testified: I am Collector of Revenue for Duval county. I am custodian of tax books for 1874-5-6,

from which sales of property were made for non-payment of taxes. This is the official book for 1874. I find the name of Joseph Lopez and the premises above described are assessed to him. I find a warrant annexed to page 70 of this book. I know of no other warrant in my office belonging to this book.

Here follows a copy of the warrant issued on 23d October, 1874, by J. C. Greeley, Assessor of Duval county, to Peter Jones, Collector, in due form, directing him to make the collections on or before the first day of February next, upon which day he was enjoined to make his final report.

The same witness proves the tax-books, assessment of the property described to Joseph Lopez, and the warrants issued by the Assessor to the Collector for the years 1875 and 1876.

Thomas E. Buckman testified to the tax sale books for the years 1874, 1875, 1876, that each one showed the premises assessed to Joseph Lopez, and had been filed in the office of the clerk as required by law; and that said books also showed the sale of said premises on the tax or assessment made against Joseph Lopez; that such sale books were endorsed as follows: "Tax sales of 1875. Filed August 12th, 1875." "Tax sales made May, 1876. Filed April 24, 1877." "Tax sales of land assessed to known owners, made 1877. Filed in the Clerk's office of Duval county, Florida, this 15th of February, 1878." Copies of so much of said several books as relates to the assessment of this property to Joseph Lopez were proved, and are made parts of the bill of exceptions, by which it appears that a poll tax was assessed against said Lopez for each year and included in the amount of the tax assessed against Lopez, but there is no testimony other than this showing whether the poll taxes were included in the amount for which the lot was sold.

37

The defendants then rested their case.

Gustave Muller, a witness called by the plaintiff, testified that he knew Joseph Lopez, and that said Lopez lived upon the premises in controversy during the years 1874, 1875 and 1876 ; that his wife and family lived with him.

To the admission of this evidence of Muller the defendants' counsel objected upon the ground that it was not in the rebuttal, and was not competent evidence at this stage of the case. The court overruled the objection, admitted the evidence and defendants excepted.

The court then at the request of the plaintiff's attorney charged the jury, among other things, as follows:

1. "If the jury believe from the evidence that when any of the assessments which are in evidence in this case were made Joseph Lopez occupied the property in question, and that he so occupied it with his wife and family, the wife being the owner of the legal title, Joseph Lopez would be an occupant within the meaning of the tax law which governed the assessment in this case." To which the defendants excepted.

2. "The deeds introduced by the plaintiff are evidence of the regularity of the proceedings from the valuation of the land to the date of the deed inclusive, and the burden is upon the defendant to prove such irregularity in the proceeding as would vitiate the deed." To which the defendants excepted.

3. "If the jury believe from the evidence that the land in question, during any one of the three years for which it was assessed, was listed to the owner or the occupant, was properly described in the assessment book, and properly valued, and the rate properly extended, and there was a default in the payment of such tax at the time required by law, and upon such default, after legal notice of the time and place designated by the law, a sale was made by the

Collector in conformity to law, and if you believe that a certificate was given to the purchaser, and that after the period of redemption expired, the lands not having been redeemed, the certificate was surrendered by the plaintiff, and that he was the purchaser named in the certificate or the assignee thereof, and thereupon a deed, such as any one of those in evidence was executed to the plaintiff, the jury must find for the plaintiff, and the burden of showing that any of these things was not done is upon the defendant, or unless the defendant shows that such proceedings did not conform to the requirements of the statutes." To which the defendants excepted.

The defendant's counsel requested the court to charge the jury, among other things, as follows :

1. " An assessment of the wife's separate estate to the husband, he living with her upon it, is void under the tax law of 1874."

2. " If you find that the property in controversy, at the time it was assessed and sold as the property of Joseph Lopez, was really the property of his wife, Jane Lopez, then the assessment and sale was void, and confers no right upon the purchaser at the tax sale."

3. " Section 55 of the tax act of 1874, under which the sales were made in the case at bar, is a mandatory requirement designed for the protection of the owner of the land which has been sold for taxes, and the filing of the exhibit of sales made six or more months after the sale was made, will make the sale void."

4. " An assessment upon the assessment book, in the hands of a Tax Collector, of a certain tax therein specified, is presumptive evidence, if not erased, that said item was included in a sale of the property afterwards for non-payment of taxes."

5. " If the jury believe that Jane Lopez was the owner

and an occupant of the property, or the owner thereof at the time of the assessment and sales for 1874, 1875 and 1876, they will find for the defendant."

The court declined to charge as in the five cases above requested, and the defendant's counsel did except separately and specifically to each refusal of the court to so charge.

The errors alleged are those included in the various objections to the evidence and to the exceptions taken in the foregoing statement.

*M. C. Jordan* and *J. W. Whitney* for Appellants.

*Cockrell & Walker* for Appellee.

THE CHIEF-JUSTICE delivered the opinion of the court.

The appellants assign as error, that the court admitted in evidence tax deeds executed to the plaintiff subsequent to issue joined and subsequent to the demise laid in the declaration.

Plaintiff had introduced to sustain his action a paper purporting to be a tax deed to himself, upon a sale in 1875 for the unpaid taxes of 1874. This deed was dated anterior to the commencement of the suit. If this deed conveyed any title to the plaintiff, which title remained in him at the time of his purchase of the certificates upon which the subsequent deeds were executed, such purchase and deeds, (no other claims intervening,) were merely evidence that he had paid the taxes therein mentioned, because it was his duty to pay the subsequent taxes, and he could thereby acquire no title, as he already possessed it.

If there is any importance to be given to the subsequent deeds as evidence of title, it is because the first deed, or what purported to be such, was ineffectual to give a title. No question was raised as to the execution of the first deed, but it was received without objection and treated as evi-

dence by the parties and the court.   We should not here interpose any question, except that we cannot consent to sanction even by our silence such an error as the record shows in the case of this deed.   *It has no witnesses to its execution.*   Section 62 of the act of 1874, Chap. 1976, says: "All tax deeds shall be executed in the name of the State, shall be signed by the County Clerk; shall be witnessed by two witnesses, and the seal of the County Court attached thereto."   It will be noticed that the attestation of two witnesses is one of the requisites in the execution of a tax deed, as necessary as the signature or the seal.   It is, therefore, not an *executed* deed.   The same is also true of the paper purporting to be a tax deed, which was offered in evidence by the plaintiff, upon a sale of the lot in 1877 for the unpaid taxes of 1876.   These papers are not effectual as conveyances of the property.

The only recognized deed offered by the plaintiff to sustain his action was the tax deed dated May 5, 1881, witnessed and acknowledged, issued upon a sale for the taxes of 1875 made May 4, 1876, by the Collector of Revenue for Duval county.

This suit having been commenced September 14, 1880, the plaintiff had no title by deed on that day.   It is contended by the plaintiff (appellee) that the period of redemption from the sale of May 4, 1876, having expired May 4, 1877, he became at that time vested with an equitable interest in the land sold, and that the deed of May 5, 1881, vested in him the legal title pursuant to the sale, and such legal title had relation to the expiration of the time of redemption and effective as a legal title from that time.

In the case of Spratt vs. Price, 18 Fla., 289, the defendant Price obtained a tax deed after the joining of issue, and it was held that a tax deed in the hands of the defendant may have relation to the day upon which he was entitled to it,

and if such day precedes the date upon which issue was joined, the deed was admissible under the general issue. The legal title in that case had passed out of the plaintiff by a tax sale and deed and had vested in the defendant on or before the trial.

Say the Supreme Court of Pennsylvania in Heffner vs. Betts, 32 Pa. St. R., 376, 378 : " If the plaintiff had title when the suit was brought, and has not when the suit is tried, he cannot recover the land against the legal owner." In that case the title of the plaintiff was divested by virtue of a judgment lien and sale on execution at which the defendant's grantor was the purchaser. In the case of Spratt vs. Price, the latter being seized of the legal title before issue joined, the plaintiff failed to recover.

Counsel for appellee here insist that the equitable interest, his *right* to have a legal title, having been perfect before suit was brought, the deed executed on the 5th May, 1881, the day of the trial, gave him a legal title which had relation to the day when he might have had a deed. They cite the case of Lynch vs. Bernal, 9 Wall., 315, to sustain this position. The case was cited in Spratt vs. Price, and sustains the doctrine there asserted. In Lynch vs. Bernal it is insisted that the rule was enforced in behalf of a plaintiff who occupied the same position as this appellee, that of a plaintiff seeking to recover land upon a title confirmed *since the demise declared upon.* This is a mistake of counsel. The confirmation of the title in that case was long before the demise laid, and the doctrine of relation did not enure to the plaintiff in that case in aid of a title acquired or confirmed after suit brought. The defendants in that case claimed a title older and superior to the *confirmation* of plaintiff's title, and the court held that the confirmation related back to the inception of plaintiff's right which antedated the defendants' title.

The case of Jackson vs. McCall, 3 Cowen, 75, also referred to by appellee's counsel, involved the question ". whether a sheriff's deed executed after issue joined in the cause, the sale having been made before the commencement of the suit, can be given in evidence *by the defendant* under the general issue ;" and the court held that it could. The court say : " This, therefore, is a case to which the doctrine of relation is peculiarly applicable, there being no strangers, or third persons, whose interest can be affected by it." And the court quoted the general rule upon the doctrine of relation from Viner's Abr. Tit. Relation, 290 : " Where there are divers acts concurrent to make a conveyance, the original act shall be preferred ; and to this the other act shall have relation."

The case also cited by appellee in 12 Johns., 140, decides that where a patent for land dated December 4, and passed the Secretary's office December 28, by the doctrine of relation the title related back to the date, that being the day when the grant was ordered by the Commissioner of the Land Office, so as to give the plaintiff a right to recover for timber cut between the date and the delivery of the patent. But the suit was not commenced before the delivery of the patent, until which time he did not *have* a legal title.

The case of Jackson vs. Bard, 4 Johns., 230, affirms the general doctrine of relation merely, but it is not a case involving the right of a plaintiff to sue in ejectment before obtaining a legal title. Neither do the cases in 1 Johns. Cases, 85, or 3 Cai., 263, decide that a plaintiff can sue in ejectment before his legal title is vested. The case of Ridgway vs. Glover, 60 Ala., 181, involved merely the question of the power of the court to order the sheriff to correct a mistake in the description of one of several parcels of land, and the doctrine of relation was applied, upon the ground the legal title passed by the sheriff's deed and

the correction of the mistake in the deed had effect as of the date of the deed.

The only authority cited by the court was 48 Mo., 219, where a defendant had been permitted to have the sheriff's deed corrected. The law in Alabama, as given in Ridgway vs. Glover, however, does not cover the case where no deed had been executed so as to vest a title before suit.

The question is, whether ejectment can be brought, except upon a legal title vested at the date of the demise laid or the commencement of the suit.

In Maryland, as in Florida, the distinction between common law and equity, as known to the English law, has been preserved. Ch. J. Taney, in Lessee of Smith vs. McCann. 24 How., 398, 403, says the action of ejectment is the only mode of trying the title to lands in that State. "And in that action the lessor of the plaintiff must show a legal title in himself to the land he claims, and the right of possession under it, at the time of the demise laid in the declaration, and at the time of the trial. He cannot support the action upon an equitable title, however clear and indisputable it may be." In Wait's Actions and Defences, Vol. 3, p. 10, et seq., we find the subject treated and many authorities cited. The action of ejectment (says the compiler) is "founded upon the principle that the defendant in possession is a wrong-doer in withholding the premises from the plaintiff; and unless he is so at the time the latter brings his action it cannot be sustained. A present right of possession is, therefore, essential," and he must have it at the commencement of the suit.

In Taylor on Ejectment, 74-77, the same rule is stated, and a large number of cases referred to citing decisions in many States. Without reference to the cases cited in Tyler, we refer to the following: 9 B. Munroe, 143; 12 Ga., 166; 11 Ill., 547; 1 Blackf., (Ind.) 421; 3 A. K. Mar.,

131 ; 4 J. J. Mar., 388 ; 25 Miss., 177 ; 11 Mo., 481 ; 13 Ill., 251 ; 32 Cal., 332 ; 5 Har. & Johns., 155 ; 4 Vt., 105 ; 10 Wend., 414 ; 2 Dana, 68 ; 11 Gill. & J., 351 ; 20 Barb., 559, and see numerous other authorities cited in VI. U. S. Dig., 1st Series, 137, §61.

In Currie vs. Tibbs, 5 B. Munroe, 440, 443, it is held for the reasons before stated that a declaration in ejectment cannot be amended by adding a new demise dated subsequent to the commencement of the suit. Also to the same effect Dudley vs. Grayson, 6 B. Mun., 259.

The clear result is that a tax deed executed on a day subsequent to the commencement of the suit cannot be introduced to prove the legal title of the plaintiff and his right of possession. Under the tax certificate, after the time of redemption had expired, the plaintiff, if he was then the holder of the certificate, had an equitable right, but not an estate under which he could recover at law, until he acquired the legal title by deed, which resulted from his equitable interest by force of the statute. He was not entitled to the possession or to rents and profits until his legal title was perfected, and that was acquired only by deed.

The court, therefore, erred in admitting the deeds executed May 5, 1881, in evidence.

The Judge charged the jury that if the property in question belonged to Jane Lopez as her separate property at the time of the assessment, but that it was assessed in the name of her husband who lived thereon with her and their family at the time, it was legally assessed in the name of the husband as the occupant. The proof shows that she was the holder of the legal title, and that it was assessed in the name of the husband who lived with her upon the property.

The statute provided (act of 1874, Ch. 1976, Sec. 6,) that

" lands owned by one person and occupied by another may be assessed in the name of the owner or occupant."

The act of March 6, 1845, provides that the property of a married woman, acquired by purchase, &c., shall remain in the care and management of the husband. (McClellan's Dig., 754.) The *ad valorem* principle of taxation prevails in this State in the assessment and levy of taxes upon property. The tax is a lien upon property taxed.

In view of the language of the statute that real estate may be assessed in the name of the owner or occupant, (*i. e.*, person in possession) and that the statute gives the husband the care and management of his wife's property, the possession thereof by the family is the possession and occupancy of the husband.

We are aware that in Wisconsin it has been held that the wife's property should be assessed in her name though husband and wife reside together on the land, (25 Wis., 496,) but we think with Judge Cooley that the rule is there " applied with great strictness." (Cooley on Taxation, 278, N. 1.) We regard the assessment of the property in the name of the husband, if he is the occupant, though his wife lives with him, as a legal assessment of the property by the laws of this State.

Under the revenue law of 1874, a tax deed, duly executed, is *prima facie* evidence of the regularity of the proceedings from the valuation of the land by the Assessor to the date of the deed inclusive and of title to the purchaser, his heirs or assigns (section 60), and the burthen of proof to defeat such title is upon the person resisting the same.

In view of the result of this examination of the errors assigned we deem it unnecessary to examine this case further. Should the controversy be continued between the parties they will have opportunity to present their proofs fully and distinctly upon every controverted point.

The judgment is reversed and the cause remanded, with directions to set aside the verdict and for further proceedings according to law.