CALVIN L. ROBINSON, APPELLANT, VS. WILLIAM B. BAR-
NETT, APPELLEE.

1. Instructions given by the court to a jury must be construed in con-
nection with the evidence given on the trial.

2. The plaintiff sued the defendant as endorser on a promissory note.
The defendant claimed that the endorsement was a forgery ; that
he wrote the words "protest waived" over such endorsement
on the day the note matured only for the purpose of saving the
trouble and expense of protest. The evidence was conflicting as
to the knowledge of the plaintiff of the fact that defendant
claimed the signature a forgery at the time those words were
written, and that such knowledge only came to him six weeks or
more after the maturity of the note, when he brought his action.
The court instructed the jury that if the plaintiff was misled
to his injury or loss by such act of the defendant in writing the
words "protest waived" over what purported to be his signature,
and was induced to sleep on his rights, and not to take measures
to secure or enforce payment of the note, the defendant was es-
topped : Held, That such charge was not error.

3. A waiver of protest upon a note may be made by the endorser not
only at the time he endorses the note, but at any time before
maturity or on the day of maturity.

4. When such waiver of protest is made after the execution of the note,
or upon the day of maturity, no new consideration is necessary
to support it.

5. Courts are not called upon to instruct juries upon a hypothesis that
does not exist in the case. They may decline to charge upon
any point of law not based upon the evidence or warranted by it.

6. It is not necessary for a court, even at the request of counsel, to re-
peat propositions of law which he has already given in his charge
to the jury.

Appeal from the Circuit Court for Duval county.
The facts of the case are stated in the opinion.

*J. C. Marcy & Son* for Appellant.

1st. The court erred in giving the following charge to
the jury, asked for by the plaintiff, to-wit:

" If the jury find from the evidence that the plaintiff was misled to his injury or loss by the act of the defendant in writing the words ' protest waived ' over what purports to be his endorsement as sued on, and was induced to sleep on his rights, and not to take any active measures to enforce the payment of the note from the maker or other endorser, or even to secure it, then the defendant is estopped and the jury must find for the plaintiff."

This was not the case made by the evidence at all. This, if it were good law, is not applicable to the case clearly made on trial. 11 Fla. R., 135.

The evidence in the case shows clearly that the words " protest waived " were written on the back of the note to *waive protest*, and for *that purpose only;* and the cashier knew and understood it, and that the *cashier was informed that the endorsement was a forgery.* Hence the president of the bank *was not misled.* He was *bound to know what his agent knew, and is bound by what his agent knew and had agreed to.*

This charge was calculated to mislead the jury, and did mislead the jury, because it proceeded upon a hypothesis that did not exist.

2d. The court erred in refusing the fourth charge asked for by the defendant as follows, to-wit :

"Admitting that the words ' protest waived ' were written at the time of the maturity on the back of the note by C. L. Robinson, and that for a particular purpose, to-wit : waiving protest, no consideration having passed between them—Barnett to Robinson—such endorsement would not bind Robinson to pay the note or create any liability."

*Before maturity* an endorsement of the name on the back of the note makes the endorser liable, but after maturity consideration must be shown. 1 Parsons on Notes and Bills, p. 581. No new consideration is shown here, even though by his act Robinson did what was equivalent to writing

his name on the back of the note; but he did not write the name at that time, or at any time, but simply wrote " protest waived " on the note, and it so happens that these words fall just above the forged endorsement of Robinson's name. Suppose he did adopt the signature as an append-age, or to give an authority to the words " protest waived," the adoption could only extend to the question of protest, and not to assuming the payment of the note.

3d. The court erred in refusing the fifth charge asked for by the defendant as follows, to-wit:

" If Mr. Robinson, defendant herein, had waived protest not then knowing that the purported endorsement was a forgery, but afterwards and before payment learned that the purported endorsement was a forgery, and then refused payment, plaintiff could not recover if the facts upon trial showed that the endorsement *was a forgery* and never had been adopted by defendant." Daniel on Negotiable Instru-ments, p. 33 ; Ib., p. 158 ; 4 Taunton, p. 93.

If defendant was discharged under such circumstances, he certainly would be if he did know and did declare the endorsement to be a forgery on presentation, and wrote the words " protest waived " on the back of the note simply for the purpose of waiving protest, and nothing more.

4th. The court erred in refusing to grant a new trial on the ground alleged by attorney of defendant, to-wit: that the verdict was contrary to the evidence in the case and the manifest weight of the evidence.

The testimony of Robinson and Moody and Norton that the endorsement of Robinson's name on the back of the note in question is a forgery stands uncontradicted.

The only question in the case is what was the effect of Robinson's writing the word " protest waived " on the back of the note in question ? Robinson says it was done in the midst of protestations that the endorsement was a forgery,

and for the purpose of saving the bank the trouble of pro-
testing.   Swaim, the cashier of the bank, a disinterested
witness, fully sustains Robinson's statement.   Barnett, the
plaintiff, says *he did not hear* that it was a forgery till six
weeks or two months afterwards ; that he saw Robinson
write the words on the note ; that he heard all the conver-
sation at the time, and that he *did not hear* Robinson say
it was a forgery.   Yet this does *not* refute the testimony of
Swaim and Robinson that Robinson *did* declare it to be a
forgery, and only wrote the waiver of protest to save them
further loss and embarrassment ; that Swaim, the cashier
of the bank, knew and understood the object of the en-
dorsement.

The negative statement of Barnett, one of the officers of
the bank, that he did not hear Robinson say it was a for-
gery does *not* prove that Robinson *did not say it to Swaim*,
another officer of the bank.   On the contrary, Swaim, in
distinct terms, says Robinson *did disclose to him that it was
not* his signature, but that he was willing to waive protest
*to save them that formality and trouble.*

It was sufficient if the cashier of the bank, the man who
had this business in hand and was competent to attend to
it alone, did have this conversation with Robinson, and did
understand the purpose of the writing, the waiver of the
protest, on the back of the note.

5th.  The court erred in not granting a new trial, because
the verdict of the jury was contrary to the 6th charge of
the court and the law in the case.   It is evident that the
jury labored under the impression, which counsel sought *so
persistently* to fasten upon their minds, that because Robin-
son did not tell *Barnett*, the President of the bank, that it
was a forgery, and *he*, Barnett, not knowing it to be a for-
gery, was led to " sleep on his rights " six weeks or more ;
that therefore Robinson was bound to pay.   It was the

business of the President *to know all that the Cashier had as-certained* in reference to the matter. At all events his failing to hear, or neglecting to ascertain, or Swaim's neglecting to inform him of the facts regarding the note and the writing on the back cannot in any way bind or involve Robinson. It was enough that one of the principal agents and officers of the bank knew it.

Robinson's words and actions in the matter amounted to this: "Well, although it is a forgery, and while I have nothing to do with the note, still I am willing to save you the trouble and expense of protesting it."

And Swaim's words and action were tantamount to his saying: "Very well, then, if you are willing to save us that trouble do so by writing 'protest waived' above the signature on the back of the note."

And Robinson's evident kindliness towards a banker with whom he was daily doing business, and his willingness to save him from any further trouble than was necessary in the embarrassing situation in which he found him, ought not to be construed to Robinson's damage or made a trap to catch, to mulct him in a large sum of money.

Hence we submit that the court erred in not granting a new trial, chiefly for the reason that the verdict was against the evidence and the weight of evidence. There was no conflict of testimony, all tended one way, viz : that the endorsement of " C. L. Robinson was and is a forgery ; that appellant never authorized the endorsement, nor sanctioned nor ratified the same ; that on the day of maturity appellant first saw the note, then others informed the Cashier that the endorsement was a forgery ; that this knowledge was clearly brought to him, appellee, through his Cashier ; that there was not nor could not be any doubt on this subject in the mind of the Cashier; that this knowledge was the knowledge of the appellee ; that appellee was bound

by it, as correctly charged by the court; that appellant never ratified the act, and that there is not a statement in the whole testimony that militates against it. The testimony of Barnett, appellee, shows that he *personally and of his own knowledge* did not know that the signature was disputed until six weeks or two months after. Yet the fact remains that through his Cashier he legally knew it. And the appellant here, defendant below, had given all the notice that the law required, that the rule of business demanded or the most rigid morality would dictate.

We cannot help expressing our surprise that a new trial was not granted on mere motion, or indeed without a motion.

*Cockrell & Walker* for Appellee.

Points for Appellee:

1. The jury has twice decided that the signature was Robinson's.

It will require a very strong case to induce this court to disturb the concurring conclusions of both the jury and the presiding court as to an issue of fact.

The principles laid down in Barnett vs. Robinson, 18 Florida, should not be extended. See Martin vs. Cole, 104 U. S. Rep., 30.

2. If Barnett was misled or deceived by Robinson's act in " waiving protest," and in consequence was induced to omit securing the debt out of Blew's property, Robinson is estopped.

It is not necessary that the party who claims an estoppel should have acted affirmatively upon it. It is enough, if he shall have been induced to refrain from such action as lay in his power by which he might have retrieved his position and saved himself from loss. See cases collected in 66 New York, (21 Sickles) 113.

44

MR. JUSTICE VANVALKENBURGH delivered the opinion of the court:

For a statement of the case in this cause see Robinson vs. Barnett, 18 Fla., 602. The judgment of the court below was in that case reversed, the cause retried, and is again here on errors assigned by the defendant below, appellant here, as follows:

1st. The court erred in charging the jury as follows: " If the jury find from the evidence that plaintiff was misled to his injury or loss by the act of the defendant in writing the words ' protest waived ' over what purports to be his endorsement as sued on, and was induced .to sleep on his rights, and not to take any active measures to enforce the payment of the note from the maker or other endorser, or even to secure it, then the defendant is estopped, and the jury must find for the plaintiff."

In refusing to charge the jury as requested by the defendant, to-wit:

" 2d. Admitting that the words ' protest waived ' were written at the time of the maturity on the back of the note by C. L. Robinson, and that for a particular purpose, to-wit: waiving protest, no consideration having passed between them, Barnett to Robinson, such endorsement would not bind Robinson to pay the note or create any liability."

3d. " If Mr. Robinson, defendant herein, had waived protest not then knowing that the purported endorsement was a forgery, but afterwards, and before payment, learned that the purported endorsement was a forgery and then refused payment, plaintiff could not recover, if the facts upon trial showed that the endorsement was a forgery and -never had been adopted by defendant."

4th. The court erred in refusing a new trial upon the ground that the verdict was contrary to the manifest weight of evidence.

5th. Upon the further ground that the verdict was conrary to the charge of the court.

The plaintiff, Barnett, to prove his case, testified in his own behalf as follows: " I am the plaintiff in this suit. I am a banker, doing business as the Bank of Jacksonville in this city. As such banker I discounted the note sued on at the request of the maker, C. W. Blew, who brought it to the bank for that purpose endorsed as it now is with the exception, the waiver of protest was not then upon it. I gave Blew five hundred dollars on the note. Some time after the note became due, and I sent Mr. Swaim to C. L. Robinson to notify him the note was due. This was in the morning. Mr. Swaim came back and reported that Mr. Robinson would call in that afternoon. In the afternoon the defendant came into the bank, and I handed him the note myself. He then wrote, in my presence, upon the note just above his name as endorser the words ' protest waived,' saying he would waive protest." On his cross-examination he said : " I did not pay the defendant any money on the note at any time. There was some conversation between Mr. Robinson and myself at the time the words were written on the back of the note by him. I heard all the conversation that took place at the time in the bank in reference to the note and the waiver of protest. Nothing whatever was said by Robinson at the time denying or calling in question the genuineness of his signature as endorser, or as to saving of cost of protest. Mr. Swaim went to see Mr. Robinson, as I have said, taking the note with him, to notify him that it was due," &c.

The note was then offered in evidence and the plaintiff rested his case.

The defendant was introduced as a witness in his own behalf and testified: " The endorsement of my name on this note is not my endorsement. I never signed it, or au-

thorized any one else to sign it for me; nor have I at any time adopted the signature or ratified it in any way; nor did I ever know of the existence of the note till called upon to pay it the day it became due. The signature of my name endorsed on the back of the note is not my writing—it is a forgery. The day it came due I received a notice of the note and that it was due that day through the mail. Afterwards Mr. Swaim came to my office and informed me that such a note was at the bank. I denied having endorsed such a note. At his request I went to the bank with him. We went down Forsyth street and entered through the private office and passed in behind the counter; he showed me the note at his desk. I denied having signed the note then and there emphatically and unequivocally. I admitted that it was a pretty good imitation of my signature, but stated that it was rougher than I ever wrote my name. I told Mr. Swaim that I felt certain that I had not signed this note, because at the time it was written I was not on good terms with Mr. Blew, and that I would not, at any time during the last six months, have endorsed any note for him. Mr. Swaim then said the note is due to-day, and if not paid I must protest it. I replied that I would save him that trouble and expense; that I would waive protest. He said then write ' protest waived ' on the back of the note. I wrote it with the purpose only of waiving protest, but not with the purpose or intention of endorsing or adopting the note, or becoming liable for its payment." On his cross-examination, among other things, he said : Shortly after the note became due " I met Mr. Blew, (the maker of the note,) who was a neighbor of mine, and I told him there was a certain note at Barnett's bank which had my name on the back of it, which he had better take care of. I said this in a pretty significant manner, and he colored up and seemed much embarrassed, and said it should

be taken care of and immediately turned and left me. He knew what note I referred to. I did not tell him the endorsement was a forgery; I did not need to. Out of regard for his family I did not publicly denounce the endorsement as a forgery." A number of bank checks and other papers were shown to witness, all of which had his signature attached, and all of which witness identified as his signature.

The deposition of Jacob Swaim was introduced, by which it appears that he was cashier of plaintiff's bank at the time of the maturity of the note, and his further material evidence is detailed in the report of the case in 18 Fla., 604.

Paran Moody testified that he was familiar with Robinson's signature, and after examination said: I should not say that the endorsement on the note was genuine; I am quite certain it is not. On his cross-examination the counsel for the plaintiff handed to him a genuine signature of Robinson attached to one of the defendant's pleadings in the cause. Witness examined it and testified: "The signature shown me does not look like Robinson's signature, and I do not believe it is his; am quite certain this signature is not his."

John H. Norton testified that he knew Robinson's signature well. After examining the note upon which the suit was brought he said: "I do not think the endorsement on this note to be Mr. Robinson's signature; I am quite sure it is not."

The plaintiff was then called in his own behalf and testified as follows: "I discounted this note on the faith of Robinson's endorsement. I did not bring suit, or take any steps to collect the amount due on the note, because I relied on Robinson's endorsement and solvency for some six weeks or two months after the note matured. At the expiration

of this interval I called on Robinson in reference to this note, and for the first time learned or heard, or had any occasion to suspect, Robinson called in question the genuineness of the endorsement. Robinson then said it did not look like his signature and sought to point out to me some imaginary discrepancies between the endorsement and his genuine signature. I told him I could not see any difference in the signatures. Mr. Robinson said he would see Blew in reference to it, and get him to pay it if he could. In the meantime Blew had put all his property beyond the reach of his creditors. When the note matured Blew was in Washington City. He had been appointed, and was then seeking to be confirmed, as Collector of this port. At the time the note matured Blew had property here."

The first exception cannot be sustained. The charge of the court so excepted to was strictly correct. Barnett had testified in effect that he was misled by the action of the defendant. Robinson testified that he denounced the signature as a forgery. Swaim nowhere says Robinson claimed it to be a forgery, but says Robinson told him " he did not remember endorsing such note for C. W. Blew; that if he did he must have been either drunk or crazy; that he and Blew had not been on good terms for some time past, and therefore he would not be likely to endorse Blew's note." According to the evidence of both Barnett and Swaim, Robinson did not insist to them that the signature was a forgery. Blew had property at the time the note matured, and before the action was commenced he had put all his property beyond the reach of his creditors. For six weeks or two months after the note matured Barnett failed to take any steps to collect the note, relying on Robinson's endorsement and solvency. If, therefore, he was misled to his loss by the action of Robinson at the time he wrote " protest waived " over his purported signa-

ture as endorsee the charge of the court was in every respect correct. There was a conflict of evidence, and the jury were the proper judges of the credibility of the witnesses and the weight of their testimony. The charge as given was fairly called for by the circumstances of the case as they existed at the time, and did not proceed from a hypothesis that did not exist. 2 Daniel's Neg. Inst., §352; (2d Ed.) Casco Bank vs. Keene, 53 Me., 103.

The second exception also cannot be sustained. The evidence shows that the words were written by Robinson over his signature on the day the note matured, and not after maturity. It was done for the very purpose of waiving protest, and not after his liability had terminated by reason of failure of demand, protest and notice. No new consideration passing from Barnett to Robinson was necessary. The waiver may be made on the day of maturity as well as at any other time; and when made after the execution of the instrument and before maturity, no new consideration is necessary to support it. In Wall vs. Bry, *et al.*, 1 La. An., 312, the court in speaking of this very question of the waiver of protest, says: " The plea that the waiver was without consideration cannot avail the defendant. It was made before the maturity of the note; the holder may have regulated his conduct in not protesting the note by the defendant's waiver, confiding in it; and to relieve him from it now would be sanctioning a breach of good faith, and permitting that party to gain by his own disingenuousness."

In Scott vs. Grier, 10 Pa. St., 103, the court hold in like manner that the waiver of protest on the day of the maturity of the note puts the endorser in the same situation as if the protest had been regularly made and proved. 2 Daniel's Neg. Insts., §§1102, 1107, (2d Ed.)

If the appellant means by this assignment of error that

the adoption of the signature after the note matured did not bind Robinson as endorser unless there was a consideration therefor, passed from plaintiff to defendant, even if the naked proposition was correct, yet the court committed no error in refusing the instruction because the liability did not grow out of the mere fact of writing the words "protest waived" over the signature, as the court expressly charged; but did grow out of the fact that the signature was genuine, or that Robinson did not at the time of writing those words over his name, or for a long time afterwards, assert to the plaintiff that the signature was a forgery; and that the plaintiff was thereby induced to rely on defendant's liability as an endorser until after Blew, the maker of the note, had disposed of his property, and the money could not be made out of him. The mere fact that no consideration passed from Barnett to Robinson at the time the words "protest waived" were written was not decisive of the case. The jury were to determine from the entire testimony whether the signature was genuine or whether it was a forgery, and whether the plaintiff was misled to his injury and loss by the acts of the defendant.

At the request of the counsel for the defendant the court charged the jury: "First, that the question of whether the signature of C. L. Robinson as endorser upon the note in suit is genuine or forged is exclusively for the jury.

"Second. That if they find the said signature of C. L. Robinson is forged upon said note, and that he has not since ratified the same, the verdict must be for the defendant, notwithstanding his waiver of protest.

"Third. That the writing of one's name on the back of a note with the words 'protest waived' written over it would only be what it purports to be, a mere waiver of protest, and would not create any liability upon the person so writing so long as no one was misled by the act or deceived by the writing."

This charge would seem to cover all that is asked for by the counsel in his second assigned error. It is certainly explicit and to the point. It is not necessary for a court to repeat, even at the request of counsel, what he has already given in his charge to the jury. In the case of Metzger vs. The State, 18 Fla., 481, this court held it was no error in the court to refuse unnecessary repetitions in his charge.

The third exception as stated in the assignment of errors is based upon an hypothesis that did not exist. Robinson, according to his own evidence, knew and unequivocally proclaimed at the time he wrote the words "protest waived" that the signature was a forgery. The whole theory of the defence was based upon that fact, and there is nowhere in the case a particle of proof that Robinson "learned that the endorsement was a forgery" after the maturity of the note. The court well declined to so charge, as it was not based upon any evidence in the case.

As to the fourth assigned error we are only to say that the evidence was conflicting, it has been passed upon by the jury, and by the court below on motion for new trial, and this court will not interfere.

The fifth error assigned cannot be sustained. The case was one properly to be decided by a jury. The law was sufficiently explained to them, the Judge below who gave the law to the jury was satified with their verdict, and this court will not interfere. McMurray & Brittain vs. Basnett, 18 Fla., 609.

Judgment affirmed.