Henry Keech, et al. v. Enriquez, et als.—Syllabus.

HENRY KEECH AND T. A. MACDONELL, PLAINTIFFS IN ERROR, VS. ISABEL COSTA Y MAESTRE ED ENRIQUEZ AND CARLOS ENRIQUEZ Y LOPEZ, HER HUSBAND, DOLORES CORTINA Y MAESTRE DE ORUNA AND MARGARITA CORTINA Y MAESTRE DE RUFIN, DEFENDANTS IN ERROR.

EJECTMENT—EVIDENCE OF PEDIGREE — DESCENT— LIMITATIONS— BEYOND SEAS—INSTRUCTIONS.

1. Where an instruction, as far as it goes, states a correct proposition of law, but is defective because it fails to qualify or explain the proposition it lays down in consonance with the facts of the case, such defect is cured if subsequent instructions are given containing the required qualifications or explanation.

2. Where the exception in favor of persons "beyond seas" is made in a statute of limitation, the law is well-settled that such term is equivalent to "without the limits of the State;" and the exception enures to the benefit of foreigners who constantly reside abroad as well as to citizens who temporarily leave the State to return again.

3. The special limitation of one year within which to assail the validity of tax titles acquired under the provisions of Chapter 1865, laws of 1872, entitled "An act to quiet tax titles to lands," is operative only upon, and applies only to, tax deeds acquired under said act "that have been recorded."

4. A deed or any other instrument, though actually transcribed upon the public records, is not "recorded" within the legal acceptation of that word, where there has been no proper proof of its execution, as required by law, authorizing a record thereof.

5. Said Chapter 1865, laws of 1872, requires the deeds thereunder made by the Commissioner of Lands and Immigration to be

witnessed by two subscribing witnesses. Any such deed not so witnessed is properly excluded from evidence, except for its value as color of title upon which to predicate an adversary possession.

6. Under the statute in this State limiting the time within which possessory actions shall be brought for the recovery of land, an adverse possession, in any case, to bar a person having the legal title, must be continuous and uninterrupted for the entire period of seven years.

7. An illegitimate child, under the statute here, inherits property through the mother the same as though such child were legitimate.

8. Instructions in a cause must be predicated upon some testimony adduced at the trial, and must be pertinent to the facts; otherwise they are abstract propositions, and there is no error in a refusal to give them, no matter how correctly stated the propositions therein may be.

9. The operation of the 8th Article of the Treaty of February 22nd, 1819, between the United States and Spain, for the cession of the Floridas, was to confirm as grants or purchases *in presenti* all grants and purchases made of lands in Florida by or of the Spanish government anterior to the date fixed in said treaty. without further action on the part of the United States through its Congress. McGee vs. Alba, 9 Fla., 382, and Magruder and Logan vs. Roe, 13 Fla., 602, cited and approved.

10. Where the plaintiffs in an action of ejectment predicate their claim to the land in dispute upon their inheritance thereof as heirs at law of the original and last grantee thereof, and when a *prima facie* case of their relationship to the original grantee is established by proper proof, the *onus probandi* is thrown upon the defendant to disprove their identity as such heirs; and if the defense shall fail in this, the fact of their identity must be held to have been established.

Writ of Error to the Circuit Court for Clay county.

The facts of the case are stated in the opinion of the court.

*T. A. & B. B. MacDonell* for Plaintiffs in Error.

An action of ejectment was brought by the defendants in error in the Circuit Court of the county of St. Johns and the venue changed to Clay county, in said circuit, on the application of the plaintiffs in error, and there tried and a judgment rendered for the defendants in error on the general issue, and the said judgment is now before the Supreme Court upon writ of error and bill of exceptions.

To entitle the plaintiffs in the court below to the judgment rendered, before the defendants were required to respond, it was necessary for them to show :

First—That they had the legal estate in the disputed lands.

Second—That such legal estate was, at the time of the commencement of this action, accompanied by a right of entry.

Third—That the defendants were at the time in possession.

This last proposition is admitted by the plea.

Admitting, for the purpose of argument, that Bartolo Maestre had, at the time of his death, such an in-

heritable title in the lands in question as would have legally descended to his heirs at law (which is by no means clear), have they shown that they are heirs at law?

The defendants in error claim as collateral heirs; they must prove the descent to themselves, and the person last seized, from some common ancestor, together with the extinction of all those lines of descent which would claim before him and defeat their right. They must, therefore, prove all the marriages, births and deaths necessary to complete their title and the identity of the persons.

The foregoing query and propositions we discuss together.

It is a well established rule in ejectment that the plaintiffs must recover on the strength of their *own* title and not through weakness of that of their adversaries.

In this case the defendants in error seek to recover possession of the land in question as heirs at law of Bartolo M. Maestre, to whom the grant in question was confirmed by the United States in 1824. It is claimed by defendants that their mother, Antonia Maestre, was the sister of Bartolo M. Maestre, and that they are his only surviving heirs. To establish the title of defendants as heirs at law of Bartolo M. Maestre, it is necessary to prove the marriage and death of their common ancestor, or, in other words, the plaintiffs claiming to be descendants of Antonio Maestre and

Catalina Nicholson, whom they claim as their maternal grandparents, before they can recover must prove that said Antonio Maestre and Catalina Nicholson were married, and that Bartolo Maestre and the alleged uncle, and Antonia Maestre, the mother of plaintiffs in Court below, were the *legitimate* children of said alleged grandparents. (See Greenleaf on Evidence, vol. 2d, 7th edition, section 354.)

Nowhere in the evidence adduced by the plaintiffs in Court below do we find the slightest attempt made to establish the fact of the marriage of their alleged common ancestor, Antonio Maestre, Senior, and Catalina Nicholson, nor is there the slightest evidence that they ever lived together or acknowledged each other as husband and wife.

The plaintiffs claim to be heirs of Bartolo M. Maestre. Whether they are such heirs is a question of law to be established by the facts brought out by the testimony. The only evidence we have here as to their being heirs of Bartolo M. Maestre is the unsupported depositions of that fact by plaintiffs themselves. The certificates of baptism introduced show that their grandparents are entirely different persons, or, in other words, while *they*, the plaintiffs, claim that they are grandchildren of Antonio Maestre, Senior, and Catalina Nicholson, the certificates of baptism show the names of alleged grandparents to be as follows: Grandparents of Dolores on mother's side, Don Antonio y Catalina Nicola, and grandparents of Isabell on mother's side being Don Antonio Maestre y, Dna Catalina

Nichel, and the paternal grandparents of Margareta (maternal grandparents not given) being Pablo y Dna Catalina Nicho. Taking the depositions of the plaintiffs and the certificates of baptism and considering them together we are unable to ascertain with any degree of certainty who are the maternal grandparents. Each certificate shows a different name, and all three disclose names different from those claimed by the plaintiffs in court below themselves to be their grandmother.

The only means sought to prove that plaintiffs are heirs of Bartolo Maestre is through the declaration of their mother, Antonio Maestre, now dead. Such declarations, made by persons who must have known the facts, and who *labored* under no temptation to deceive, carry with them such a presumption of truth, as coupled with the great difficulty of procuring more certain evidence, sanctions their reception. (See Starkie on Evidence, 6th American Edition, vol. 2, page 604.)

But the very foundation on which such declarations are admissible fails where it is probable that parties who made the declaration labored under any temptation to misrepresent the facts. When that is the case such evidence is inadmissible. (See Starkie as above, page 605.) If the declarations of Antonia, the mother, could have been brought before the jury by any means whereby the temptation to deceive could not prevail, we admit that such declarations should be

well considered. In this case, however, the declarations are brought to the attention of the jury only through the medium of the parties directly interested in the result of this suit, who have every temptation to trim the declarations to suit their case. In a case of this kind we think the rule of receiving declarations of deceased members of the family should be followed with extreme caution.

The defense has shown that by a certain instrument received in evidence as color of title, executed and delivered to Henry Keech, one of the defendants in the court below, by Hugh A. Corley, Commissioner of Lands and Immigration for the State of Florida, he entered upon the lands and into possession, in good faith, with the intent to occupy the same permanently, and did from the time of entry occupy, cultivate and improve it. That when he was not personally on the place he had one Fuquay in charge, under him. That after Fuquay he (Keech) placed one Burnell on the place, as his agent, who occupied the place as his agent, until the spring of eighteen hundred and eighty-three, which is also shown by the agreement of counsel, which is incorporated in the bill of exceptions. Thus about ten years had elapsed from the time Keech entered until his possession was attempted to be interrupted by Enrequez representing himself as agent of Cuban parties. Enrequez notified Keech that he had taken possession. Upon that notice Keech commenced

604 SUPREME COURT.

Henry Keech, et al. v. Enriquez, et als.—Argument of Counsel.

proceedings of forcible entry and unlawful detainer against one Burnell, representing himself to be the tenant of Enrequez. Then ejectment, upon the commencement of which action Enrequez abandoned the place, and commenced, himself, an action of ejectment against plaintiffs in error, which is the action now before the court, which action on the part of Enrequez clearly admitted at, and up to the time the possession of Keech and MacDonell, who claimed under Keech.

At no time from 1873 until the year 1883 was the continuous possession of Keech broken. He or his authorized servant was there, paying taxes, cultivating, visiting the place, looking after the interest and exercising all acts of owner thereof.

The intent of Keech can further be collected from his prompt action in bringing suit against the defendants in error and the dismissal of his suits as soon as Enrequez conceded the possession by instituting suit himself.

The defendants in error assumed and the court below so charged that if the defendants in error were beyond seas, that the statute did not run against them until one year after they came to Florida.

We respectfully submit that the statute, Chapter 82, approved February 27, 1847, defining the term "beyond the seas," controls this case and it is reasonable that it should. The State and Federal courts were open to them at all times from 1873, during the period

of the running of the statute of limitation, to assist them to their rights and claim to the land in our possession.

Even if this proposition is not correct, there is no evidence except by implication that the defendants in error were "beyond seas" or without the limits of the State during the time of the running of the statute of limitation.

An adverse possession may, after the lapse of the statutory period confer a possessory title, which is good even against the former owner.

Seven years adverse possession is not only a negative bar to the action or remedy of plaintiff, but takes away his right of possession and gives a positive title to the defendant.

See Horne vs. Carter, 20 Fla., page 45; Magruder & Logan vs. Perpall, 13 Fla., page 602 and 612; Sanford vs. Cloud, 17 Fla., page 557.

Washburn on Real Property, third edition, pages 130 and 146; Sedgwick & Wait on Trial Title to Land, section 727; Tyler on Ejectment, page 88.

The court below charged that if the jury believe from the evidence that plaintiffs have proved title to the land in question to be in them, they are entitled to recover it.

This is not the law.　See 13 Fla., page 613.

Adverse possession must be continuous for the statu-

tory period to toll the owner's right of entry. But short and reasonable intervals between successive possessors or between the departure of one tenant and the entrance of another will not break the continuity of adverse possession.

See De LaVega vs. Butler, 47 Texas, 529; Rayner vs. Lee, 20 Mich., 384.

*C. M. Cooper* for Defendants in Error.

TAYLOR, J.:

On the 21st of June, 1884, the defendants in error, Isabella Costa y Maestre de Enriquez and Carlos Enriquez y Lopez, her husband, Dolores Cortina y Maestre de Oruna and Margarita Cortina y Maestre de Rufin, instituted their action of ejectment in the Circuit Court of St. Johns county against the plaintiffs in error, Henry Keech and T. A. MacDonell, for the recovery of possession of the following described land in St. Johns county, viz: Section 39, township nine (9), south of range thirty, east, being the grant of land confirmed by the United States to Bartolo M. Maestre, containing 597.30 acres. After issue joined upon a plea of the general issue, one of the defendants, Henry Keech, filed his petition in the Circuit Court of St. Johns county for a change of venue of said cause, on the ground that the plaintiffs had an undue influence over the minds of the inhabitants of St. Johns county. On the 11th of March, 1886, the petition for change of venue was granted, and the cause removed for trial to

Clay county, in the Fourth Judicial Circuit. On the 24th of March, 1886, the cause was tried in Clay county before a jury, and resulted in a verdict and judgment for the plaintiffs. Motion for a new trial was made upon the following grounds: 1st. That the verdict of the jury was not sustained by the evidence adduced on the part of the plaintiffs; 2d. That the verdict of the jury is contrary to the charges of the court; 3d. That the court erred in charging the jury—in giving the instructions asked by the attorney for plaintiffs, including 1, 2, 3, 4, 5 and 6; 4th. That the court erred in refusing defendants' instructions one and two and seven, as requested; 5th. That the verdict of the jury is against the evidence. This motion was denied, and from this judgment the defendants in the court below have taken their writ of error to this court.

The errors assigned are: 1st. The court below rejected proper evidence on the part of defendants; 2d. The court below erred in giving improper instructions on behalf of plaintiffs; 3d. The court erred in refusing to give proper instructions on behalf of defendants; 4th. The court erred in overruling the motion of defendants to set aside the verdict of the jury and for a new trial; 5th. The court erred in rendering a judgment in favor of the plaintiffs, and against the defendants. We will consider these assignments of error in the order in which they come.

After a careful scrutiny of the record we are unable to discover where any evidence of any character was

offered by the defendants at the trial below and rejected by the court. Neither can we find that any exception was taken or noted to any refusal of the court below to admit any evidence offered by the defense; consequently the first assignment fails for want of facts to constitute its subject matter.

The second assignment of error is, that the court erred in giving improper instructions on behalf of plaintiffs. This assignment we will consider in connection with the third ground of the motion for new trial, which, in substance, asserts the error of court below to be in giving the 1st, 2d, 3rd, 4th, 5th and 6th instructions. These instructions, that we find from the bill of exceptions were excepted to in their entirety, are as follows :

1st. That if the jury believe from the evidence that the plaintiffs have proved the title to the land in question to be in them, they are entitled to recover it.

2d. That if the jury find from the evidence that the plaintiffs have been beyond seas during adverse possession under color of a title under Chapter 1865 of the Laws of Florida, the plaintiffs have the right to appear and contest the title within any time before coming to Florida, or within a year after coming to Florida.

3d. Possession of land is presumed to be in the legal owner at all times when there is not actual adverse possession in some one else.

4th. Adverse possession, in any case to bar a person

having the title, must be continuous and unin-
terrupted for the entire time required by law, which,
in actions for the recovery of real property or posses-
sion thereof, is seven years. Whenever adverse pos-
session is interrupted the time must begin anew.

5th. An illegitimate child can inherit on the moth-
er's side as well as though legitimate.

6th. If the jury find from the evidence that the plain-
tiffs, their agent or tenant, were in the possession of
the land in question at any time within seven years be-
fore the bringing of this suit, the statute of limitations
will not run against them.

The first of these instructions, although stating a
correct proposition of law, might have been confusing
to the jury because of its failure to inform the jury
that although the legal right to the land might be in
the plaintiffs, that yet their remedy to secure that right
might have been forfeited by lapse of time and an ad-
verse possession by the defendant; but we think this
defect in the first instruction was subsequently sup-
plied by the first instruction asked for by the defend-
ant and given by the court, so that no harm could have
resulted from the broadness of this first instruction.

The second instruction above is predicated upon Sec-
tion 6 of Chapter 1865, Laws of 1872, entitled: "An
act to quiet tax titles to lands," which statute provides,
in brief, for the sale and conveyance by the Commis-

sioner of Lands and Immigration of all lands, after the expiration of six months after publication of lists thereof, that have accrued to the State by virtue of any tax deed made or executed for the non-payment of any taxes due the State. Section 6 of said act provides that any deed made in conformity with its provisions which shall have been recorded for one year in the county where the land is situated, shall operate as a complete bar against all persons who might thereafter claim title to said land in consequence of any informality or illegality of the taxes or proceedings, &c., but provides that infants, persons of unsound mind, imprisoned, or "beyond the sea," shall have the right to appear and contest such title to said lands within one year after their disabilities are removed. This charge, confined as it was to the special title acquired by the defendants under the provisions of this statute, we think was proper, as the title or color of title offered by the defendants in support of their claim was acquired under the provisions of this special law ; and the plaintiffs, according to the proofs, being residents continually in the Island of Cuba, which, according to the settled doctrine upon the subject, brings them within the meaning of the term "beyond seas." The now well settled meaning of that term in statutes of limitatation being held to be equivalent to " without the limits of the State." Angell on Limitations, sec. 200 ; Murray's Lessee vs. Baker, 3 Wheat. (U. S.), 341 ; Bank of Alexandria vs. Dyer, 14 Peters (U. S.), 141. The plaintiffs here were not only out of the limits of

the State of Florida, but were beyond the limits of the United States in a foreign territory. And it is further well settled that the exception in favor of "persons beyond seas" is not to be confined to subjects who may occasionally leave the country and return, but it is general, and extends to foreigners who are constantly resident abroad, as in the case of the plaintiffs here. Angell on Limitations, sec. 204, and authorities there cited. We think, however, that this second instruction was unnecessary in the case from the fact that the special limitation provided in Section 6 of said Chapter 1865 for the institution of actions to assail titles acquired under said act is operative only upon deeds acquired under said act "that have been recorded." The deed acquired by the defendants under this act, although appearing to have been spread upon the records of St. Johns county, has never yet been "recorded" in the legal acceptation of that word, because there has never been any proof of its execution authorizing a record thereof. Edwards vs. Thom., 25 Fla., 222 ; 5 South. Rep., 707; Hope vs. Johnston, 28 Fla., ——, (decided June Term, 1891) ; 9 South. Rep., 830. The special limitation provided for in Chapter 1885 could not apply in this case because there has been no record of the defendant's deed acquired under that act. We think, too, that the court below ruled properly in excluding the defendant's deed acquired from the Commissioner of Lands and Immigration under said Chapter 1865 except for the purpose of showing color of title, because of the fact that said

deed had no witnesses. This act, like all other stat-
utes that undertake to confiscate the property of the
citizen through the medium of sales thereof for taxes,
must be strictly construed. Section 4 of this act pro-
vides with great particularly a set form for the deeds
to be made under its provisions, and this prescribed
form requires two subscribing witnesses. The deed
offered by the defendants has none, and was properly
confined to its value in evidence as color of title only.
Paul vs. Fries, 18 Fla., 573. The third instruction
above is a correct proposition of law and only needs
for its support a reference to Section 4 of Chapter
1869, Laws of 1872.

The fourth instruction above also states the law cor-
rectly. Not only is it the well settled common law of
this country, but sec. 5 of chapter 1869, providing pe-
riods of limitation of all kinds of actions, expressly
provides that there shall be a continued adverse occu-
pation and possession for seven years of premises in-
cluded in any instrument held as a claim of title in
order to bar the true owner from its recovery. Tyler
on Ejectment, p. 910 *et seq.* and authorities cited.

The fifth instruction above is also a correct state-
ment of the law as contained in our statute, sec. 8,
p. 470, McClellan's Digest, which provides that ille-
gitimate children shall inherit property in this State
through the mother equally with legitimates.

We think the sixth instruction above did not state
the law accurately or correctly. Though the plain-

tiffs may have acquired possession of the land at some time within seven years prior to the institution of their suit, still that possession may have been an unlawful one; and the statute of limitation may have already ripened the defendant's claim into a perfect possessory title prior to such unlawful interruption of his possession by the plaintiffs; but as there is no proof to show that the defendants had acquired a perfect title by possession anterior to the interruption thereby by the plaintiffs, and no proof to show when that interruption took place, the giving of this charge is error without injury.

The third assignment of error, to the effect that the court erred in refusing instructions asked on behalf of defendants, must be confined to the refusal of the court to give the 3rd, 8th and 9th instructions requested by the defendants, as these are the only ones refused to be given by the court, and the only ones to the discarding of which exceptions were in any manner taken by defendants at the trial below; though the fourth ground of the motion for new trial erroneously cites the first, second and seventh instructions as being the ones refused. The instructions refused, numbered here as in the record, are as follows: 3d. "In considering the time against the plaintiff you will put all the possessions together that were hostile to the plaintiffs that were in privity to the defendants, and through which they claim, and then ascertain if they make more than seven years hostile adverse possession, and if you ascertain that fact, the defendants are en-

titled to a verdict." 8th. "If the jury find from the evidence that Keech, one of the defendants, entered upon the land in dispute under color of title and held possession thereof adversely to the claim of the plaintiffs seven years before the interruption of possession by plaintiffs, then such adverse possession comes within the statute of limitations, and the plaintiffs are, therefore, barred from re-entering, and you should find for the defendants." 9th. "If the jury find from the evidence that Bartola M. Maestre filed his claim to the Maestre grant in 1820, and that in 1824 the said Bartola M. Maestre died; and that the claim of the said Bartola M. Maestre was not confirmed until 1827, after his death, then the plaintiffs cannot recover, there being no one living by the name of Bartola M. Maestre, to whom said grant could have been confirmed."

The third instruction above asked for and refused was not at all applicable to the facts in this case, as there was no attempt, even, by the defendants to prove that any one else, except Keech, the defendant, ever occupied or possessed this land, that were in privity with him in any other capacity than as his agent or tenant. The only possession attempted to be proved was by him or by his agents or tenants, whose possession was, of course, his. There were, therefore, no facts upon which to construct the theory of the "tacking of possessions" by different persons at different times in privity of title with each other, as

is contemplated by this instruction; and there was no error in its refusal. Instructions in a cause must be predicated upon some testimony adduced at the trial, and must be pertinent to the facts; otherwise they are abstract propositions. J. T. & K. W. Ry. Co. vs. P. L. T. & Mfg. Co., 27 Fla., 9; 9 South, Rep., 661; Robinson vs. Barnett, 19 Fla., 670.

There was no error in the refusal to give the eighth instruction above asked by the defendant, as we do not think it was warranted by the evidence in the cause. There was no proof as to what years Keech, the defendant, had held possession of the land, or for how long a time he had possession of it; nor was it shown when his possession, if he ever had any, was interrupted by the plaintiffs. Neither was there any evidence to show that his right to the land had ripened into a complete possessory title by seven years' adverse occupancy thereof anterior to the interruption of that possession by the plaintiffs.

There was no error in the refusal of the court to give the ninth instruction above asked for by the defendants. The enunciation, as law, therein proposed, is directly in conflict with the decisions of this court in McGee vs. Alba., 9 Fla., 382, and in Magruder and Logan vs. Roe, 13 Fla., 602, in which it is properly held that the operation of the 8th Article of the Treaty of February 22d, 1819, between the United States and Spain for the cession of the Floridas, was to confirm

as grants or purchases *in presenti* all grants or purchases made by or of the Spanish government anterior to the date fixed in said treaty without further action on the part of the United States through its Congress. Under the law as announced in said two decisions, Bartola M. Maestre in 1820, when his grant was made to him by the Spanish authorities, became then vested with the title to the land embraced in said grant, *in presenti*, without any further action on the part of this government.

The fourth and fifth assignments of error, the refusal of the court to grant a new trial, and the entry by the court of the judgment in the cause, we consider together. Without commenting at length or in detail upon the evidence in the cause, after careful consideration thereof, our conclusion is, that the plaintiffs have established the fact by proper evidence that they are the sole heirs at law to the land in dispute of the original grantee from the Spanish government, Bartola M. Maestre. They have by proper evidence at least made out a strong *prima facie* case that they are such heirs at law and entitled as such to the land in question; and having done so, the burden was then thrown upon the defendants to prove the contrary. The defense having made no effort to break down the *prima facie* case thus made by the plaintiffs, the fact of their identity as such heirs must be held to have been established. Tyler on Ejectment, p. 488, et seq., to p.

495, and authorities cited. Our conclusion, for the reasons heretofore given in commenting on the deed from the Commissioner of Lands and Immigration to the defendant Keech, is that such deed was not sufficient to vest the title in Keech; and we conclude further that the evidence adduced by the defense as to adverse possession of the land was not sufficient to justify any other verdict than the one found by the jury in favor of the plaintiffs.

Discovering no errors in the record sufficient to disturb the judgment of the court below, the same is hereby affirmed.