W. J. BERRY, R. D. BERRY, HENRY BERRY, FRANK BERRY, MARY BERRY, ALMA GONZALES AND HER HUSBAND, ALBERT GONZALES, LEONORA KING AND HER HUSBAND, LAWRENCE KING, AND SUSIE WHEAT AND HER HUSBAND, JAMES WHEAT, *Appellants,* v. PERDIDO REALTY COMPANY, *Appellee.*

Opinion filed July 21, 1922.

1. In a suit in equity where the complaint without leave of the court and over the defendant's objection causes to be filed an amendment to the bill of complaint and no ruling affirmatively appears to have been made by the court upon the objection it will be presumed that the amendment was allowed.

2. Title by adverse possession cannot be built upon desultory logging operations on wild lands where the possession of the land is not of such character that at any time during the period of seven years the claimant could be successfully sued as a trespasser.

3. To establish title by adverse possession the person claiming such title should show clearly, definitely and with accuracy that he continuously maintained a legally recognized possession for the full statutory period necessary to bar the former owner.

4. Unless such adverse possession is shown as satisfies the statute possession is cast upon the legal title.

5. A conveyance of real estate made from one person to another where a third person is in the adverse possession of the land sought to be conveyed such deed is void as to such person but valid as between grantor and grantee.

6. When a defendant out of possession claims to have acquired title by adverse possession, he must show that he held adverse possession of the land for the full statutory period of seven years. If he fails in such proof, an objection that one of the deeds in the adversary's chain of title was made while defendant was in adverse possession of the land will not avail him against the owner of the record title in possession.

7. The findings of the Chancellor upon a question of fact will not be disturbed by the appellate court unless the evidence shows clearly such findings to have been erroneous.

An Appeal from the Court of Record for Escambia County, C. Moreno Jones, Judge.

Affirmed.

*D. W. Berry,* for Appellants;

*E. C. Maxwell,* for Appellee.

ELLIS, J.—The Perdido Realty Company exhibited its bill in the Court of Record for Escambia County in February, 1915, against W. J. Berry, R. D. Berry, Henry Berry, Frank Berry, Mary Berry, Alma Gonzales and her husband, Albert Conzales, Leonora King and her husband, Lawrence King, and Susie Wheat and her husband, James Wheat, to quiet the title to a certain tract of land in Escambia County described as the West half of Section 15 in Township 2 South, Range 32 West, otherwise known as Innerarity Point. The bill prayed that the court would decree that the complainant was the owner in fee simple of the land, that it was in possession of the same and entitled to maintain the same, that the defendants have no right or interest in the property and that they be enjoined, their agents, tenants, servants and employees and all persons claiming through or under them from asserting any claim of right, title, interest or possession in and to the same and from interfering with the complainant's possession and for general relief.

On February 11th, 1921, the Judge of the Court of Record rendered a decree against the defendants in accordance with the prayer of the bill. The defendant appealed.

The pleadings, consisting of bill, answers, pleas and replications, were settled and filed and testimony taken before November, 1917. By an amendment to their answers made after leave granted the defendants prayed for affirmative relief, that the court would decree that they were the owners of the property and that the complainant had no interest or right in it and that it be restrained from asserting any right or title to it or from interfering with the defendants in taking possession of the same.

On November 5th, 1917, the defendants set the cause down for final hearing on the pleadings and testimony.

The original bill rested upon the allegations that the Perdido Realty Company was the owner of the land described and was in possession of it.  That it derived its title by mesne conveyance from the heirs of John Innerarity in whom the title to the land was confirmed by the United States Government.  That the Pensacola Investment Company acquired title to the east half of the "section or point" in 1906 by conveyance from the legatees of C. C. Yonge and during the same year acquired title to the west half of the section by deed from Mrs. Ella Clinch, the then owner "through mesne conveyances from the heirs of John Innerarity."  That in 1914 the Pensacola Investment Company was adjudged a bankrupt, J. H. Smithwick was appointed trustee and he under due authority conveyed the land to F. M. Hatch and F. M. Scott and in 1914 they conveyed to the complainant.

"That during their respective ownerships of said land the said Pensacola Investment Company and other predecessors of the complainant in interest therein were in the actual possession thereof, having a tenant or tenants residing upon and improving and cultivating portions of said section."  That after the complainant acquired the property it placed a "tenant or tenants upon said land to reside thereupon and protect it from trespass."  That after the complainant acquired the title the defendants began to assert a claim or interest in the west half of the section of land described.

On the 6th of April, 1918, more than three years after the bill was filed and about five months after the cause had been set down by the defendants upon final hearing, the complainant without leave of the court and over the defendants' objection filed its amendment to its bill of

complaint by alleging title in complainant by adverse possession as follows: "That the said possession of the complainant, and of its predecessors in title, has been actual, open, adverse, notorious and continuous for much more than seven years prior to the filing of the bill." The objection interposed by the defendants to the amendment was that it "was too late to make such amendment and because the same is made without authority." No ruling seems to have been made by the court upon this objection.

This proceeding is assigned as the basis of the first assignment of error.

In the final decree the court ordered that the bill be taken as confessed against Henry, Frank and Mary Berry, Alma Gonzales and husband, Leonora King and husband and Susie Wheat and husband on the ground that they had not filed appearances, plea, demurrer nor answer to the bill.

On the contrary, all the defendants appeared and all answered the bill except Leonora King and husband. Whether this misconception of the fact exerted any influence upon the decision it is difficult to state. But where a suit is brought against nine persons to test the validity of their claim to property where all claim under the same right and seven confess the superiority of the opponent's title, such fact is at least slightly persuasive of the insincerity of the claim of the remaining two, if it does not exert a compelling influence upon the court's action, which depends upon the existence or not of facts the evidences of which are conflicting, confusing and by no means clearly conclusive.

The allowance of the amendment to the bill, which must

be inferred from the failure of the court to act upon the objection, is not reversible error, because amendments are allowable almost to an unreasonable extent, especially when it does not appear that any injury or inconvenience to the opposite party is produced thereby.

According to the evidence, the complainant's case rested upon two theories instead of one, as set forth in the original bill, and the amendment was deemed necessary to the end that if the judge deemed the adverse possession theory to be the better ground or one more clearly established, the allegation and proof would be said to conform. As the defendant's claim to the property rested upon title acquired by adverse possession prior to the date of the deed from the heirs of John Innerarity to Sallie S. Tate in August, 1875, one of the conveyances in complainant's chain of title, and subsequent possession of the property by complainant was vigorously disputed by witnesses who testified in behalf of the defendants, no material injury appears to have been inflicted upon the defendants by the allowance of the amendment. See Guggenheimer & Co. v. Davidson, 62 Fla. 490, 56 South. Rep. 801; Warren v. Warren, 73 Fla. 764, 75 South. Rep. 35; Hartford Fire Insurance Co. v. Brown, 60 Fla. 83, 53 South. Rep. 838; Vinson v. Palmer, 45 Fla. 630, 34 South. Rep. 276.

The evidence in the case shows that the Perdido Realty Company's claim for equitable relief against the assertion by defendants of their title to the property rests upon two propositions:

First, by mesne conveyances from John Innerarity, whose purchase of the property from the Government of Spain was confirmed by the Government of the United States. Second, by adverse possession under color of title for seven years. To sustain the latter contention the pos-

session of the Pensacola Investment Company under its deed from Mrs. F. Ella Clinch, dated August 27th, 1906, is relied upon, which with that of the complainant under its deed from F. M. Hatch and F. M. Scott, dated July 21st, 1914, up to the date of filing the bill February 13th, 1915, it is contended shows actual, open, adverse, notorious and continuous possession for more than seven years prior to the filing of the bill.

If the decree for the complainant in the judgment of the court below rested upon that proposition it was erroneous. Mrs. F. Ella Clinch obtained a deed from Sterrett Tate in September, 1900. The property was awarded to Sterrett Tate by a decree dated December 8th, 1893, of the Circuit Court for Escambia County in a suit for partition between Sterrett, Walter, Jr., Herbert, Dexter and Lola Tate and Colonel Walter Tate. These were the heirs of Sallie Tate, who, as stated, obtained a deed from the heirs of John Innerarity August 7th, 1875.

We are unable to discover any evidence of occupancy or possession of the property by Mrs. Clinch and the only act of ownership ever exercised by Sallie Tate was through her husband, Colonel Walter Tate, who dispossessed the brother-in-law of Lemuel Walker about the year 1880. This brother-in-law of Walker had then occupied the old "Berry" house for about a year and a half. Lemuel had then been living for several years in the old "Touart" house east of the property called Innerarity Point. According to Walker in May 1877 the "Berry" house was an old abandoned house, occupied by no one until his brother moved in about 1878, after he was ejected by Colonel Tate, it remained unoccupied and abandoned. It was destroyed by fire in 1879 or 1880. From that time until

Henry Handrop built on the point it was not occupied. He built there, according to Walker, about 1907.

According to A. S. Handrop, a son of Henry, the latter obtained permission from Jno. E. Stillman, who was then President of the Pensacola Investment Company, one of the predecessors in title of the complainant. This fact was also confirmed by Mr. R. B. Simpson, who was at that time an officer of the Company which as stated acquired a deed from Mrs. Clinch in August 1906. According to A. S. Handrop, the possession of his father Henry, continued for about three or four years, but on this point his memory was very uncertain, because testifying in 1918 he said on cross examination that it had been about twelve years since they moved away from the Point.

J. W. Hendricks, for the complainant, testified that about "six or seven years ago" he did some "logging" on the Point for about "six weeks" for C. M. Larkins, who got the timber for the "Perdido Lumber Co."

According to Henry M. Yonge, an employee of the Pensacola Investment Company, the Perdido Lumber Company bought the timber during the latter part of 1910 from the Pensacola Investment Company. This witness said that the title to the property passed into the Pensacola Investment Company by deed from him and Aubry Maura. According to Chas. Mayo Larkin, the quantity of timber removed from the Point was 167,838 feet and the amount paid to the Pensacola Investment Company was six hundred and seventy-one dollars and thirty-five cents. But from the time Handrop moved upon the place until the cutting of the timber not more than three years elapsed. From that time until 1914 when a man by the name of E. Van Dusen was found by Mr. F. M. Hatch to be living on the place under a misapprehension that he had "entered"

it as State lands there seems to have been possession by no one. Mr. Hatch said that Van Dusen was a squatter. In 1914 Mr. Hatch, representing the Pensacola Investment Company, gave Van Dusen a ninety day lease. Some time afterwards Van Dusen left and Mr. Helton moved upon the land, but whether under authority from the Company or the Berry heirs there is conflict of testimony. The Company put Helton off by proceedings in the County Judge's Court in January, 1915.

We have held that title by adverse possession cannot be built upon deslutory logging operations on wild lands where the possession of the land is not of such character that at any time during the period of seven years the claimant could be successfully sued as a trespasser. See Clark et al. v. Cochran, et al., 79 Fla. 788, 85 South. Rep. 250.

The evidence does not show open, notorious, actual and continued adverse possession of the property by the complainant and its predecessors for a full period of seven years. Upon the other hand, the possession was intermittent, scrambling and desultory and for long periods at a time apparently abandoned altogether. See Hyer v. Griffin, 55 Fla. 560, 46 South. Rep. 635; Gould v. Carr, 33 Fla. 523, 15 South. Rep. 259; Horton v. Smith-Richardson Investment Co., 81 Fla. 255, 87 South. Rep. 905; McKinnon v. Johnson, 59 Fla. 332, 52 South. Rep. 288; Townsend v. Edwards, 25 Fla. 582, 6 South. Rep. 212.

To have established title by adverse possession the complainant should show clearly, definitely and with accuracy that it continuously maintained a legally recognized possession for the full statutory period necessary to bar the former owner. Dallam v. Sanchez, 56 Fla. 779, 47 South.

Rep. 871; Adams v. Fryer, 59 Fla. 112, 52 South. Rep. 611; Baugher v. Boley, 63 Fla. 75, 58 South. Rep. 980.

Unless such adverse possession is shown as satisfied the statute possession is cast upon the legal title. See Caro v. Pensacola City Co., et al., 19 Fla. 766; Kendrick v. Latham, 25 Fla. 819, 6 South. Rep. 871.

The complainant's legal title depends upon an unbroken chain of conveyances from the heirs of John Innerarity, who purchased from the Spanish Government and such purchase was confirmed by the Government of the United States. But the defendants insist that one link in the chain of deeds is void as to them. That deed is the one from the Innerarity heirs to Sallie S. Tate, dated August 7th, 1875. It is contended that Albert Berry, the ancestor of defendants and under whom they claim was in the actual adverse possession of the property under color of title from I. D. Johnson. See Coogler v. Rogers, 25 Fla. 853, 7 South. Rep. 391.

That case holds that while a deed made under such circumstances is void as to the party in possession it is valid as between grantor and grantee. See Gibbs v. McCoy, 70 Fla. 245, 70 South. Rep. 86.

It follows, therefore, that unless the possession of the third party ripens into title by adverse possession for the full period of seven years the objection cannot avail him against the grantee or those claiming under her who subsequently acquire possession before the title of the third party is complete.

If Albert Berry was in the actual adverse possession of the property at the date of the deed to Mrs. Tate, but abandoned the possession before his title ripened into one by adverse possession, neither he nor those claiming under

him, his heirs for instance, can urge the objection to the Tate deed with any merit against the complainant in possession. Because the title was not divested out of the legal owners until the full statutory period had run, during which time Albert Berry or those claiming under him should have been continuously in possession according to the requirements of the statute claiming the property adversely. If he abandoned the property, ceased to occupy it as the statute directs before the full period of seven years had run, then he acquired no title by adverse possession and of course had none to transmit to his heirs.

The title of the defendants depends upon title in Albert Berry, their ancestor, by adverse possession. The defendants therefore were required to show clearly, definitely and with accuracy that Albert Berry continuously maintained a legally recognized possession for the full statutory period necessary to bar the former owner. See Dallam v. Sanchez, *supra;* Adams v. Fryer, *supra;* Watrous v. Morrison, 33 Fla. 261, 14 South. Rep. 805; Wilkins v. Pensacola City Co., 36 Fla. 36, 18 South. Rep. 20; Turknett v. Johnson, 66 .Fla. 309, 63 South. Rep. 578; Keech v. Enriquez, 28 Fla. 597, 10 South. Rep. 91.

When the proof is not positive and clear of adverse possession and occupation of land for the full statutory period no title by adverse possession can be adjudged. Adverse possession has reference to physical facts that may be proven with certainty and definiteness. See Horton v. Smith-Richardson Investment Co., *supra.*

The west half of Section 15 Township 2 South, Range 32 west called Innerarity Point is a body of land containing several hundred acres constituting a peninsular projecting into Perdido Bay. The point is connected with the mainland by a narrow strip several hundred feet long, at one

point it is only about twenty feet wide, called the "Narrows."

Some time prior to the year 1871 I. D. Johnson lived upon the peninsular west of the narrows. He probably lived there about one year before Mr. Albert Berry moved upon the place, said Mr. Hunter, a witness for the defendants. Johnson was probably a squatter. There is no evidence that he had any instrument in writing purporting to convey the land to him. Mr. Berry bought the claim of I. D. Johnson and moved himself and family upon the property. He cleared several acres of land, occupied with his family the houses built by Johnson and constructed a fence across the narrows to keep cattle off the place. The fence consisted of forked poles driven in the ground for posts and one pole resting in the forks from post to post. If the fence was a substantial one, then the "Point" might be said to be substantially enclosed so far as entry upon it by cattle was prevented, because the depth of water surrounding the "Point" would prevent ingress by them from every place except at the narrows and the fence would turn them there.

How long Mr. Berry continued to occupy the land under his deed or writing from Johnson is not at all clear. One witness, Mr. H. T. Johnson, said he thought it was about six years. Upon cross examination he said "Since being refreshed by questions as to the date when I entered college I now think it to be about seven years." He said however that he became acquainted with "Mr. Berry on Perdido Bay about 1871 to 1876." The witness said he "went to college in 78-79 and 80, that is 1878-1879 and 1880" and that it was his recollection that Mr. Berry was living at Innerarity Point when the witness left for college. Mr. W. J. Berry, a son, lived with his father upon

the place until 1874, when W. J. Berry went to Texas. He did not know how long his father remained there.

The witness Lemuel Walker said that in 1877 the "Berry" house on Innerarity Point was vacant and appeared as if it had not been occupied for years. It was an "old abandoned house." No one was living on the Point. In 1880 his brother-in-law moved into the house and he was put out by Colonel Tate. Walker moved to the place he occupied east of the Point on May 11th, 1877.

According to the testimony of Mr. Walker, the possession of Mr. Berry with that of Johnson would not aggregate seven years. We do not mean to convey the impression that between one claiming title but not under a written instrument and his successor claiming under him by a written instrument, there is privity of possession as to any lands not actually possessed by the former.

The judge of the court before whom the cause was tried seems to have decided between the witnesses on this point in favor of the complainant. We are unable to say that the evidence shows clearly such finding to be erroneous. Therefore, in accordance with the settled rule of this court, we will not disturb the decree. McGill v. Chappelle, 71 Fla. 479, 71 South. Rep. 836; Simpson v. First Nat. Bank of Pensacola, 74 Fla. 539, 77 South. Rep. 204; Farrell v. Forest Inv. Co., 73 Fla. 191, 74 South. Rep. 216; Smith v. Dowling et al., 81 Fla. 867, 89 South. Rep. 315.

It is unnecessary to discuss the other questions presented. As the defendants failed to establish title in their ancestor, Albert Berry, by adverse possession and their right to or claim of ownership being derived from no other source, the other questions discussed are unnecessary to be determined.

The decree of the court is affirmed.

BROWNE, C. J., AND TAYLOR, WHITFIELD AND WEST, J. J., concur.